### BEN WILLIAMS v. THE STATE.

#### No. 2272. Decided December 19, 1900.

**1. Gaming—Indictment—Public House.**

An indictment for gaming which charges that the gaming was "at a public house, to wit, a house commonly resorted to for the purpose of gaming," sufficiently alleges the public character of the house, and is sufficient to charge the playing of a game of cards at a public house in contemplation of article 379, Penal Code; overruling, so far as there is a conflict, Miller v. State, 35 Texas Criminal Reports, 650; Burks v. State, 35 Southwestern Reporter, 659; White v. State, 39 Texas Criminal Reports, 269; Nail v. State, 50 Southwestern Reporter, 704.

**2. Same.**

The allegation that a house is a public house, by its being commonly resorted to for gambling, while not sufficient as an allegation that it was a gaming house, is sufficient to show that it was a public house. The statute makes a distinction betwen a public house and a gaming house. Henderson, J., dissenting.

**3. Same—Evidence Sufficient.**

See opinion for facts stated held sufficient to support a conviction of gaming.

APPEAL from the County Court of Erath. Tried below before Hon. L. N. FRANK, County Judge.

Appeal from a conviction of gaming; penalty, a fine of $10.

The opinion states the case.

No briefs on file for appellant.

*Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment charged appellant with playing at a game with cards at a public house, to wit, a house commonly resorted to for the purpose of gaming. The contention is made that the indictment is not sufficient, and does not describe the

house in which the playing occurred with sufficient particularity. We are of opinion that it does. Article 379, Penal Code, provides: "If any person shall play at any game with cards at any house for retailing spirituous liquors, storehouse, tavern, inn or any other public house," etc., he shall be punished. Article 380 reads: "All houses commonly known as public and all gaming houses are included within the meaning of the preceding article. Any room attached to such public house, and commonly used for gaming is also included, whether the same be kept closed or open. A private room of an inn or tavern is not within the meaning of public place, unless such room is commonly used for gaming. Nor is a private business office or a private residence to be construed as within the meaning of a public house or place, provided such private residence shall not be a house for retailing spirituous liquors." It is well settled that where the gaming occurred at one of the houses declared to be public by statute, and by it named, it is sufficient to state that the gaming occurred at such house. But, where it is not so named, the facts constituting it a public house must be stated in the indictment, in order to bring it within the definition of the offense. Article 380 seems to draw a distinction between houses commonly known as public and gaming houses. This has been recognized by the decisions of this court. In Miller v. State, 35 Texas Criminal Reports, 650, it was said that a private residence or a private room could be a gaming house, although spirituous liquors were not therein retailed. If the statute had not drawn the distinction between a public house, in the common acceptation of that term, and a gaming house, this conclusion would not, probably, be correct, because the statute expressly declares that a private residence can not be a public house, within the meaning of the statute, unless spirituous liquors are retailed. But it can be a gaming house, though spirituous liquors are not therein sold. It is also held that the allegation that the house was made public by reason of being commonly resorted to for gaming was not a sufficient allegation charging the house to be a gaming house. Now, if the distinction between a public house and a gaming house is correct, then the allegation that the house was a public house, by reason of the fact that it was commonly resorted to for gambling, might not be sufficient to allege that it was a gaming house, but sufficient to show it is a public house. This is not in violation of, but in consonance with, the terms of the statute. Any evidence which would give character to the house as a public house would be within the purview of the statute, save the exceptions named in article 380. So we hold that this indictment sufficiently alleges the public character of the house. This is not antagonistic to the real question at issue in the Miller case, supra. In Miller's case the indictment alleged the house to be public, and, further, that the playing occurred at A. J. Brown's room in the Heizman dwelling, and which said room was commonly used for gaming. These allegations did not charge an offense. It showed it to be in a private room; did not allege that it was a gaming house, but undertook to

charge it to be a public house. That case is authority for the statement that, if this allegation 'had been tantamount to alleging it to be a gaming house, the indictment would have been sufficient, although it was a private dwelling. But having alleged it was a private room, and as such was a public house, it was necessary to have gone further and alleged that spirituous liquor was retailed, or it was necessary to have alleged expressly that it was a gaming house. The distinction drawn in the Miller Case between a public house and a gaming house is well taken. We therefore believe the indictment is sufficient to charge the playing of cards at a public house. Miller v. State, supra; Burke v. State (Texas Crim. App.), 35 S. W. Rep., 659; White v. State, 39 Texas Crim. Rep., 269, and Nail v. State (Texas Crim. App.), 50 S. W. Rep., 704—where inconsistent with this opinion are overruled, to the extent of the conflict.

It is contended the evidence is insufficient to support the conviction. As the record is presented to us, we are of opinion it is sufficient. The card-playing occurred in the upper room of a house known as the "Old Dublin Saloon Building." The upstairs was not occupied, and the little room where the playing occurred was cut off from the main room by walls, doors, etc., in the usual way. Only one witness was introduced, and he testified that while he and Philip Harrold were walking about town a tall man and a stranger invited them to join in a game of cards. They went to the two-story rock building in Dublin known as the "Old Dublin Saloon Building," and knocked at the door at the foot of the stairway. Sone one inside asked who was there, and the stranger replied, "Arkansas." The door was then opened by a negro known as Duke. The parties went upstairs, and into the small room where the card playing was going on. There were quite a number of persons in the room—among them, defendant and three other men, sitting at a table. Appellant was shuffling a deck of cards. The table was the only furniture in the room, and the witness sat down on the floor in one corner, with some negroes and Philip Harrold, who accompanied him to the room, and played cards until 2 o'clock in the morning. They played poker and seven-up. He did not play at the table where defendant was sitting. During the entire time this witness was in the room appellant's little son would take a nickel out of the "jack pot" every time a game was played in which witness was engaged. This is what is called a "take off," and goes to the man running the house. Quite a number of persons were coming in the room and leaving during the night. There were paper chips on the table where appellant was, and these were used by the parties during their playing. This is sufficient evidence to support the conviction. The judgment is affirmed.

*Affirmed.*

HENDERSON, Judge (dissenting).—I do not believe the indict-ment charges any offense against the laws of this State, and it is

antagonistic to the views expressed by this court in the following cases: Miller v. State, 35 Texas Crim. Rep., 650; Burke v. State (Texas Crim. App.), 35 S. W. Rep., 659; White v. State, 39 Texas Crim. Rep., 269; Nail v. State (Texas Crim. App.), 50 S. W. Rep., 704. I believe those decisions announce the correct rule in the construction of our statute on gaming, in that they draw a distinction between a gaming or gambling house and a house or room commonly used for gaming, and that the rule there announced is applicable to this case, and that the decision of the majority of the court overrules those decisions.